**DER-PARSEGHIAN LAW GROUP**
Mary Der-Parseghian (SBN 224541)
mary@marydlaw.com
Cindy N. Tran (SBN 228214)
cindy@cntlawgroup.com
Jeffrey Bao (SBN 307346)
jbao@cntlawgroup.com
35 N. Lake Avenue, Suite 740
Pasadena, California 91101
Tel 626.564.2994  •  Fax 626.564.2293

Attorneys for Plaintiffs Albert Kirakosian and Kirako, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT KIRAKOSIAN, an individual; KIRACO, LLC, a limited liability company,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>J&L D SUNSET WHOLESALE & TOBACCO, a California corporation; J&L D SUNSET WHOLESALE & TOBACCO dba 7SG STARS GLASS; WHOLESALE PALACE, INC, a California corporation; JACK HAROUN, an individual; GLENOAKS HOUSE OF SMOKES, a California corporation; GLENDALE HOUSE OF SMOKES, a California corporation; HOOKAH KING, an unknown entity; LEVON VARDANYAN, an individual; PLANET TOBACCO, an unknown entity; HAYK'S SMOKE SHOP, a California corporation; THE HEAVY HITTER GROUP, INC, a California corporation; US BATTA, a California corporation; VATCHE KIWANIAN, an individual; US Global Imports, an unknown entity; SOUTHBAY | Case No.:   16-cv-06097<br><br>**COMPLAINT FOR:**<br><br>1. **PATENT INFRINGMENT;**<br>2. **TRADEMARK INFRINGMENT;**<br>3. **TRADE DRESS INFRINGMENT;**<br>4. **COMMON LAW TRADEMARK INFRINGMENT;**<br>5. **COUNTERFEIT;**<br>6. **UNFAIR COMPETITION and FALSE DESIGNATION OF ORIGIN**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**　　　　　　　　　　　　　　　　　　　　　　　　1

WHOLESALE, a California corporation; MISSION WINE & SPIRITS, an unknown entity; ZAHRAH TOBACCO LLC dba ZAHRAH HOOKAH; and DOES 1 through 100, inclusive,

        Defendants.

Plaintiffs ALBERT KIRAKOSIAN and KIRACO, LLC ("Plaintiffs") complain and allege as follows:

## THE PARTIES

1. Plaintiff Albert Kirakosian ("Kirakosian") is an individual residing in the County of Los Angeles.

2. Plaintiff Kiraco, LLC ("Kiraco") is a limited liability company organized under the laws of California with its principal place of business at 18543 Devonshire Street, #383, Northridge, California 91324. Plaintiff Kiraco does business as Apple on Top aka AOT.

3. Upon information and belief, Defendant J&L D Sunset Wholesale & Tobacco ("J&L") is a corporation organized under the laws of California and has its principal place of business at 9297 9th Street, Rancho Cucamonga, California 91730. Upon information and belief, J&L imports into the United States, offers for sale and sells hookah and hookah accessories in and throughout the United States.

4. Upon information and belief, J&L does business as Defendant 7SG Stars Glass ("7SG") at its principal place of business at 8687 Hellman Avenue, Suite B, Rancho Cucamonga, California 91730. Upon information and belief, 7SG imports into the United States, offers for sale and sells hookah and hookah accessories in and throughout the United States.

5. Upon information and belief, Defendant Wholesale Palace, Inc. ("WP") is a corporation organized under the laws of California and has its principal place of business at 1008 W. Burbank Boulevard, Burbank, California 91506. Upon

information and belief, WP imports into the United States, offers for sale and sells hookah and hookah accessories in and throughout the United States.

6.  Upon information and belief, Defendant Jack Haroun ("Haroun") is a California resident.  Upon information and belief, Defendant Haroun offers for sale and sells hookah and hookah accessories in and throughout the United States through WP.  Further, upon information and belief, Defendant Haroun treated and continues to treat Defendant WP as his alter ego rather than as a separate entity, that Defendant Haroun was no adequately capitalized and was a mere shell, instrumentality and conduit through which Defendant Haroun did business, that Defendant Haroun exercised complete dominion and control over Defendant WP, and that Defendant Haroun failed to follow corporate formalities and used Defendant WP for personal expenses.  There was such a unity of interest and ownership between Defendants Haroun and WP that the separate personalities of the corporation and Defendant Haroun do not in reality exist.  Upholding the corporate entity and allowing Defendant Haroun to escape personal liability for the entity's act would sanction a fraud and promote an injustice.

7.  Upon information and belief, Defendant Glenoaks House of Smokes ("Glenoaks HOS") is a corporation organized under the laws of California and has its principal place of business at 543 W. Glenoaks Boulevard, Glendale, California 91202.  Upon information and belief, Glenoaks HOS imports into the United States, offers for sale and sells hookah and hookah accessories in and throughout the United States.

8.  Upon information and belief, Defendant Glendale House of Smokes ("Glendale HOS") is a corporation organized under the laws of California and has its principal place of business at 1415 E. Colorado Street, Suite P, Glendale, California 91205.  Upon information and belief, Glendale HOS imports into the United States, offers for sale and sells hookah and hookah accessories in and throughout the United States.

**COMPLAINT** 3

9. Upon information and belief, Defendant Hookah King ("HK") is an unknown entity and has its principal place of business at 408 E. 4th Street, Los Angeles, California 90013. Upon information and belief, HK imports into the United States, offers for sale and sells hookah and hookah accessories in and throughout the United States.

10. Upon information and belief, Defendant Levon Vardanyan ("Vardanyan") is a California resident. Upon information and belief, Vardanyan offers for sale and sells hookah and hookah accessories in and throughout the United States through HK.

11. Upon information and belief, Defendant Planet Tobacco ("PT") is an unknown entity and has its principal place of business at 335 W. Broadway, Suite B, Glendale, California 91203. Upon information and belief, PT imports into the United States, offers for sale and sells hookah and hookah accessories in and throughout the United States.

12. Upon information and belief, Hayk's Smoke Shop ("Hayk") is a corporation organized under the laws of California and has its principal place of business at 11349 Santa Monica Boulevard, Los Angeles, CA 90025. Upon information and belief, Hayk imports into the United States, offers for sale, and sells hookah and hookah accessories in and throughout the United States.

13. Upon information and belief, The Heavy Hitter Group, Inc. ("Heavy Hitter") is a corporation organized under the laws of California and has its principal place of business at 14050 Orange Avenue, Paramount, California 90240. Upon information and belief, Heavy Hitter imports into the United States, offers for sale, and sells hookah and hookah accessories in and throughout the United States.

14. Upon information and belief, Defendant US Batta ("Batta") is a corporation organized under the laws of California and has its principal place of business at 9844 Glenoaks Boulevard, Sun Valley, California 91352. Upon

information and belief, Batta imports into the United States, offers for sale, and sells hookah and hookah accessories in and throughout the United States.

15. Upon information and belief, Defendant Vatche Kiwanian ("Kiwanian") is a California resident. Upon information and belief, Defendant Kiwanian offers for sale and sells hookah and hookah accessories in and throughout the United States through Batta.

16. Upon information and belief, Defendant US Global Imports ("US Global") is an unknown entity and has its principal place of business at 406 East 4th Street, Los Angeles, California 90013. Upon information and belief, US Global imports into the United States, offers for sale, and sells hookah and hookah accessories in and throughout the United States.

17. Upon information and belief, Defendant Southbay Wholesale ("Southbay") is an unknown entity and has its principal place of business at 17240 S. Main Street, Gardena, California 90248. Upon information and belief, Southbay imports into the United States, offers for sale, and sells hookah and hookah accessories in and throughout the United States.

18. Upon information and belief, Defendant Yiwu Royal Shisha Craft Firm ("Yiwu") is a Chinese company and has its principal place of business at No. 1, Building 2, Zahozhai Fifth Zone, Yiwu, Zhejian, China (Mainland). Upon information and belief, Yiwu imports into the United States, offers for sale, and sells hookah and hookah accessories in and throughout the United States.

19. Upon information and belief, Defendant Mission Wine & Spirits ("MWS") is an unknown entity and has its principal place of business at 1785 E. Washington Boulevard, Pasadena, California 91104. MWS has three (3) additional locations: 825 W. Glenoaks Boulevard, Glendale, California 91401; 13654 Burbank Boulevard, Sherman Oaks, California 91401; and 708 S. Glendale Avenue, Glendale, California 91205. Upon information and belief, MWS offers for sale and sells hookah and hookah accessories in and throughout the United States.

20. Upon information and belief, Defendant Zahrah Tobacco, LLC ("Zahrah"), dba Zahrah Hookah, is a limited liability company organized under the laws of California and has its principal place of business at 704 North Valley Street, Suite R&S, Anaheim, California 92801.  Upon information and belief, Zahrah imports into the United States, offers for sale and sells hookah and hookah accessories in and throughout the United States.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over these claims pursuant to 28 USC §§ 1331 and 1338 because this action arises under the United States patent laws, 35 USC § 101, *et seq.,* and the United States trademark laws, Section 43 of the Lanham Act, 15 USC § 1115 *et seq.*  This Court has supplemental jurisdiction over the state law causes of action pursuant to 28 USC § 1367.

22. Upon information and belief, all Defendants are subject to this Court's personal jurisdiction because they regularly conduct business and/or solicit business, engage in other persistent courses of conduct and/or derive substantial revenue from goods and/or services sold to persons and/or entities in the State of California.

23. Upon information and belief, all Defendants directly infringed, and continue to infringe, and induce others to infringe, and continue to induce others to infringe US Patent No. D726,366 by making, selling, and/or offering for sale, within the State of California and elsewhere throughout the United States, products that possess most, if not all, of the claims of Plaintiff Kirakosian's Patent (collectively "infringing Products").  Defendants' Infringing Products are substantially similar, if not exact, to Plaintiffs' patented and trademarked products ("AOT Products").

24. Upon information and belief, all Defendants made numerous false and misleading statements within the State of California and elsewhere throughout the United States that are false designations of origin and false descriptions of the infringing products in a manner constituting unfair competition.  Such false and misleading statements constitute trademark infringement because they are likely to

cause consumer confusion between the Infringing Products and AOT Products that are marketed, advertised, made, used, sold, and/or offered for sale in association with Plaintiff Kiraco's trademark ("AOT Mark").

25. Venue is proper in this judicial district pursuant to 28 USC §§ 1391 and 1400. Defendants are subject to personal jurisdiction in this judicial district in accordance with due process and/or California's long arm statute. Defendants engaged in, and continue to engage in, the marketing, advertising, making, using, selling, and/or offering for sale of infringing products in this judicial district. Therefore, the complained of acts of patent infringement, unfair competition, trademark infringement, and trade dress, occurred, and continue to occur, within this judicial district.

## ALTER-EGO ALLEGATIONS

26. Upon information and belief, Defendant Vardanyan treated and continues to treat Defendant HK as his alter ego rather than as a separate entity, that Defendant HK was not adequately capitalized and was a mere shell, instrumentality and conduit through which Defendant Vardanyan did business, that Defendant Vardanyan exercised complete dominion and control over Defendant HK, and that Defendant Vardanyan failed to follow corporate formalities and used Defendant HK for his personal expenses. There was such a unity of interest and ownership between Defendants Vardanyan and HK that the separate personalities of the corporation and Defendant Vardanyan do not in reality exist. Upholding the corporate entity and allowing Defendant Vardanyan to escape personal liability for the entity's act would sanction a fraud and promote an injustice. Accordingly, Defendant HK is the alter ego of Defendant Vardanyan.

27. Upon information and belief, Defendant Haroun treated and continues to treat Defendant WP as his alter ego rather than as a separate entity, that Defendant Haroun was no adequately capitalized and was a mere shell, instrumentality and conduit through which Defendant Haroun did business, that Defendant Haroun

exercised complete dominion and control over Defendant WP, and that Defendant Haroun failed to follow corporate formalities and used Defendant WP for personal expenses. There was such a unity of interest and ownership between Defendants Haroun and WP that the separate personalities of the corporation and Defendant Haroun do not in reality exist. Upholding the corporate entity and allowing Defendant Haroun to escape personal liability for the entity's act would sanction a fraud and promote an injustice. Accordingly,

28. Upon information and belief, Defendant Kiwanian treated and continues to treat Defendant Batta as his alter ego rather than as a separate entity, that Defendant Batta was no adequately capitalized and was a mere shell, instrumentality and conduit through which Defendant Kiwanian did business, that Defendant Kiwanian exercised complete dominion and control over Defendant Batta, and that Defendant Kiwanian failed to follow corporate formalities and used Defendant Batta for personal expenses. There was such a unity of interest and ownership between Defendants Kiwanian and Batta that the separate personalities of the corporation and Defendant Kiwanian do not in reality exist. Upholding the corporate entity and allowing Defendant Kiwanian to escape personal liability for the entity's act would sanction a fraud and promote an injustice.

## FACTS COMMON TO ALL COUNTS

29. Plaintiff Kirakosian is an inventor and seller of hookah and hookah accessories through Plaintiff Kiraco, LLC dba Apple on Top ("AOT"). To enhance the hookah smoking experience, Plaintiff invested heavily into developing a brand and hookah bowel that would nearly fit all hookahs, be small and sleek, and that could still deliver the full smoking experience. The results are the patented AOT Product and AOT Mark.

30. On December 19, 2012, Plaintiff Kirakosian filed for patent registration for his hookah pipe head. On April 7, 2015, the United States Patent and Trademark Office ("USPTO") duly and validly issued Patent No. D726,366 ("AOT Patent")

COMPLAINT 8

naming Plaintiff Kirakosian as the applicant and inventor. (Attached as Exhibit A is a true and correct copy of Patent No. D726,366; Attached as Exhibit B is a true and correct photograph of the AOT Product).

31. The patented AOT Product, like its name suggest, is in the shape of an apple with a metal puncture bowel/pan sitting on its top. A single rubber green leaf is attached to the metal bowel to allow for easy handling of hot coals. The AOT Product's body is comprised of rubber ridges and comes in various colors.

32. On or about May 30, 2013, Plaintiff Kiraco began using the AOT Mark to sell hookah and hookah accessories. Plaintiff has devoted substantial time, effort, and resources to the development and extensive promotion of the AOT Mark and the products offered thereunder. Due to Plaintiff Kiraco's trademark registration and continuous use in connection with hookah and hookah accessories, the hookah smoking public has come to recognize and rely upon the AOT Mark as an indication of the high quality and unique design of Plaintiffs' hookah and hookah accessories.

33. As a result of Kiraco's trademark registration and extensive use of its AOT Mark, Plaintiff Kiraco has built and now owns enormously valuable goodwill symbolized by the AOT Mark.

34. On April 7, 2015, the USPTO duly and validly registered the AOT Mark registration 4,717,006. (Attached as Exhibit C is a true and correct copy of the AOT Mark Registration). Plaintiff Kiraco, LLC is the sole owner of all right, title, and interest in the AOT Mark. The AOT Mark is a word mark with the letters A, O, and T or as it appears "AOT."

35. Since October 2012, Plaintiff has also been using the trademark "Apple On Top" on his website as well as part of the url for plaintiff's website www.appleontop.com.

36. In connection with its trademark registration and extensive use, Plaintiff Kiraco owns the AOT Trade Dress which comprises Plaintiff's patented AOT Product packaged into a clear small plastic box with text on a distinct red banner at

the base of the box. At the bottom, the text states "AOT ®." At the back of the box is a red backdrop with white text describing the AOT Product and its origins as well as the url for Plaintiff's website. (Attached as Exhibit D is a true and correct photograph copy of Plaintiff's AOT product packaging.)

37. Upon information and belief, all Defendants are infringing and/or inducing others to infringe by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, products that possess most, if not all, of the claims of the AOT Patent. (Attached as Exhibit E is a true and correct photograph copy of the Infringing Products).

38. Defendants' use of the AOT Patent in commerce is without the permission, license, or authority of Plaintiffs.

39. The Infringing Products appear identical to the AOT Products in all material respects. The products, including the marks as well as the packaging are identical. The Infringing Products even includes the "patent pending" claim on the bottom of the product.

40. Defendants' infringement of the AOT Patent is willful and deliberate. Defendants' knowingly received payments for this unauthorized and counterfeit product.

41. Defendants' actions have already confused and deceived, and threaten to further confuse and deceive, the consuming public concerning the source of the unauthorized and counterfeit products.

**FIRST CAUSE OF ACTION**

**(Patent Infringement – Against all Defendants)**

42. Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 34 above.

43. Plaintiff, Albert Kirakosian is the owner of all right, title, and interest in the AOT Patent.

44. Upon information and belief, Defendants have been and/or are directly infringing and/or inducing infringement of and/or contributorily infringing the AOT Patent by, among other things, making, using, offering to sell, or selling in the United States, or importing into the United States, products that are covered by most, if not all, claims of the AOT Patent.

45. Plaintiff, Albert Kirakosian has only one authorized manufacturer and one authorized wholesaler of the AOT Product covered under the AOT Patent.

46. At no time did Defendants have the authorization, legal right, or consent to engage in such activities in disregard of Plaintiffs' rights in the registered AOT Patent.

47. Plaintiff, Kirakosian has inspected the Infringing Products and believes such infringing products, while looking identical to that of the AOT Products were not in fact manufactured or sold by plaintiff's authorized manufacturer and wholesaler. In fact the Infringing Products do not use the high grade material used in the AOT Products.

48. As a result of Defendants' unlawful infringement of the AOT Patent, Plaintiff Kirakosian has suffered and continues to suffer damages for which Plaintiff Kirakosian is entitled to recover from Defendants in amounts to be established according to proof.

### SECOND CAUSE OF ACTION
### (Trademark Infringement – Against all Defendants)

49. Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 41 above.

50. Plaintiff Kiraco is the owner of the federally registered AOT trademark as set forth in Exhibit C. The registered trademark is a valid, protectable and distinctive trademark that Plaintiffs have continuously used to promote the AOT products since the date of first use as designated in the USPTO records.

51. Upon information and belief, Defendants have traded on Plaintiffs' AOT Mark, goodwill, and reputation in connection with AOT Product and confused consumers as to the origin and sponsorship of Defendants' products and pass their products off as Plaintiffs' product. The Infringing Products bear the AOT mark and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' products are manufactured, produced, distributed, endorsed, sponsored, approved, or connected with Plaintiffs. Plaintiffs are informed and believe and thereon allege that Defendants utilized the AOT Mark in order to create consumer confusion and has in fact created consumer confusion including but not limited to initial interest confusion and confusion as to affiliation or association between Plaintiffs and Defendants.

52. At no time did Defendants have the authorization, legal right, or consent to engage in such activities in disregard of Plaintiffs' rights in the registered AOT Mark.

53. Plaintiffs are informed and believes, and thereon alleges that, unless restrained by the Court, Defendants will continue to infringe on Plaintiffs' AOT Mark, thus causing a multiplicity of judicial proceedings, and that pecuniary compensation will not afford Plaintiffs adequate relief for the damage to its trademark in the public perception. Further, Plaintiffs are informed and believe and thereon allege that in the absence of injunctive relief, customers are liekly to continue to be mistaken or deceived as to the true source, origin sponsorship, and affiliation of Defendants and its goods.

54. Plaintiffs are informed and believe and thereon allege that Defendants' actions were committed, and continue to be committed, with actual notice of Plaintiffs' exclusive rights and with an intent to cause confusion, to cause msitake, and/or to deceive, and cause injury to the reputation and goodwill associated with Plaintiff Albert Kirakosian and the AOT products. At a minimum, plaintiffs are entitled to injunctive relief and to recover Defendants' profits, whichever is greater,

1  together with Plaintiffs' attorneys' fees pursuant to 15 U.S.C. §1117. In addition,
2  pursuant to 15 U.S.C. §1118, Plaintiffs are entitled to an order requiring destruction
3  of all infringing materials in Defendants' possession.
4      55.     Plaintiffs are informed and believe and thereon alleges that as a
5  proximate result of Defendants' activites trading on Plaintiffs' advertising, sales and
6  consumer recognition, Defendants have made substantial sales and profits in amounts
7  to be established according to proof.
8      56.     As a proximate result of Defendants' activities trading on Plaintiffs'
9  advertising, sales and consumer recognition, Plainitffs have been damaged and
10 deprived of substantial sales and has been deprived of the value of the AOT Mark as
11 a commercial asset, in amounts to be established according to proof.

## THRID CAUSE OF ACTION
### (Trade Dress Infringment – Against all Defendants)

14     57.     Plaintiffs incorporate herein by reference the allegations set forth in
15 paragraphs 1 through 49 above.
16     58.     Plaintiffs' AOT Trade Dress constititute protectable trade dress. The
17 protectable trade dress of the AOT Trade Dress is nonfunctional features that identify
18 the product and its source to customers.
19     59.     AOT's trade dress incorporates as its packaging a clear plastic box
20 allowing the AOT product within the box to be visible from the top, bottom and three
21 sides of the box and one side that is red in color with words describing the product
22 printed in white along with the designation of the origin of the product.
23     60.     Upon information and belief, and in addition to infringing and/or
24 inducing others to infringe by making, using, offering to sell, and/or selling in the
25 United States, and/or importing into the United States, products that possess most, if
26 not all, of the claims of the AOT Patent, Defendants have begun advertising at
27 respective principal place of business and on websites and other social media outlets
28 with the same mark as the AOT Mark and AOT Trade Dress. (See Exhibit E).

**COMPLAINT**                                        **13**

61. Defendants sell their Infringing Products with the AOT Mark and AOT Trade Dress. The captions, packaging box, and appearance are nearly, if not exactly, the same. Both the AOT Product and Defendants' Infringing Products resemble the shape of an apple with rubber ridges and a metal puncture bowel/pan with a single rubber leaf for handling of hot coal.

62. Defendants' use of the AOT Mark and AOT Trade Dress in commerce is without the permission, license, or authority of Plaintiffs. Such use is confusingly similar to Plaintiff's federally-registered AOT Mark and AOT Trade Dress.

63. Defendants began its infringement of the AOT Mark and AOT Trade Dress with full knowledge of Plaintiff's registration and use of the AOT Mark and AOT Trade Dress. On information and belief, Defendants undertook these actions with the intent of confusing consumers, so that it could trade on and receive the benefit of the goodwill built up by Plaintiffs at great labor and expense over many years.

64. Defendants' use of the AOT Mark and AOT Trade Dress in the manner described above is likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parities, to affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of the goods and/or services of Defendants by Plaintiffs.

65. Defendants' use of the AOT Mark and AOT Trade Dress in a manner described above falsely indicates to the purchasing public that the goods and/or services of Defendants originate with Plaintiffs, or are affiliated, connected or associated with Plaintiffs, or are sponsored, endorsed, or approved by Plaintiffs, or in some manner related to Plaintiffs.

66. Defendants' use of the AOT Mark and AOT Trade Dress in a manner described above enables Defendants to gain acceptance for its goods and/or services, not solely on its own merits, but on the reputation and goodwill of Plaintiffs and their AOT Mark and AOT Trade Dress.

**COMPLAINT** 14

67. Defendants' use of the Infringing Marks and Trade Dress in a manner described above prevents Plaintiffs from controlling the nature and quality of goods and services provided under those marks and place the valuable reputation and goodwill of Plaintiffs in the hands of Defendants.

68. The activities of Defendants have caused irreparable injury to Plaintiffs and the public, and unless restrained by this Court, will continue to cause irreparable injury to Plaintiff and to the public. There is no adequate remedy at law for this injury.

69. Upon information and belief, in violation of 15 USC § 1125, Defendants' use of the AOT Trade Dress constitute the use in commerce of false designations of origin, false or misleading descriptions or representation that are likely to cause confusion and mistake and to deceive consumers as to the source of origin of Defendants' product or the affiliation, connection, or association of Defendants with Plaintiffs or the sponsorship or approval of Defendants' products by Plaintiffs and constitute trade dress infringiment.

70. As a proximate result of Defendants' unlawful infringement of the AOT Trade Dress, Plaintiffs have been damagged and deprived of substantial sales and has been deprived of the value of the AOT Trade Dress as a commerical asset, in amounts to be established according to proof.

## FOURTH CAUSE OF ACTION

### (Common Law Trademark Infringment – Against all Defendants)

71. Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 63 above.

72. Since October 2012, Plaintiff, Albert Kirakosian has used the term "Apple On Top" to refer to his hookah products and have use the term as Plaintiffs' website address www.AppleOnTop.com.

73. Upon information and belief, Defendants' use of the "Apple on Top" trademark constitute the use in commerce of false designations of origin, false or

**COMPLAINT** 15

misleading descriptions or representation that are likely to cause confusion and mistake and to deceive consumers as to the source of origin of Defendants' product or the affiliation, connection, or association of Defendants with Plaintiffs or the sponsorship or approval of Defendants' products by Plaintiffs and constitute trade dress infringement.

74. As a result of Defendants' unlawful infringement of the Apple On Top trademark, Plaintiffs have suffered and continues to suffer damages. Plaintiffs have been damaged and deprived of substantial sales and has been deprived of the value of the AOT Trade Dress as a commerical asset, in amounts to be established according to proof.

## FIFTH CAUSE OF ACTION
## (Counterfeit – Against all Defendants)

75. Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 67 above.

76. Counterfeiting has been recorgnized as a serious issue resulting in tremendous losses to American businesses. To combat counterfeits, Congress passed the "Anticounterfeiting Consumer Protection Act of 1966" (ACPA).

77. California has a similar statute in Business and Profession Code §14250.

78. Defendants' actions aslo constitute use of one or more "counterfeit marks" as defined in 15 U.S.C. §1116(d)(1)(B).

79. Upon information and belief, Defendants have, without the consent of Plaintiffs, used in commerce counterfeit AOT Marks in connection with the sale, offering for sale, distribution, or advertising of such goods, which is likely to cause confusion, mistake, or deceive the purchaser that the conterfeit product originated from Plaintiffs.

80. Defendants' unauthorized use of the AOT Mark on counterfeit products that they have distributed has caused and is causing consumer confusion about the source and sponsorship of these coutnerfeit goods.

**COMPLAINT** 16

81. Defendants' sale of these counterfeit products has caused considerable damage to the goodwill of Plaintiffs and diminshed the brand recognition of the Registered Marks. The sales of these counterfeit products by Defendants has further resulted in lost profits to Plaintiffs and have resulted in a windfall for Defendants.

82. Plaitniffs reserve the right to elect, at any time before final jdugment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. §1117(c)(1) and/or (2). Due to the nature of the counterfeiting, plaintiffs are entitled to an award of statutory damages of up to $2,000,000 per mark infringed under 15 U.S.C. §1117(c)(2).

83. In the alternative, and at a minimum, Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, acutal damages, enhanced profits, and treble damages, costs, and reasonable attorneys' fees under 15 U.S.C. §1117(b).

## SIXTH CAUSE OF ACTION

**(False Designation of Origin/Unfair Competition – Agaisnt all Defendants)**

84. Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 76 above.

85. The marketing and sale of the infringing products by Defendants constitutes false designation of origin, which is likely to cause confusion and mistake and to deceive consumers as to the source or origin of such goods or sponsorship or approval of such goods or commercial activities by Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

86. Defendants' conduct as alleged herein also constitutes unfair and deceptive acts or practices in the course of bsuiness, trade, or in commerce, in violation of California Business and Professions Code §§ 17200 and 17500, et seq.

87. Upon informaiton and belief, Defendants' acts of unfair competition, as described above, are deliberate and willful and undertaken with the intent to misappropriate the goodwill and reputation associated with Plaintiffs' AOT Mark, AOT Trade Dress, and AOT Products.

88. Plaintiffs are informed and believe and thereon allege that as a proximate result of Defendants' false designation of origin, Defendants stand to make substantial sales and profits in amounts to be established according to proof.

89. Plaintiffs are informed and believe and thereon allege that unless restrained by this Court, Defendants will continue to designate falsely the origin of their goods, causing irreparable damage to Plaintiffs and causing a multiplicity of lawsuits. Pecuniary compensation will not afford Plaintiffs adequate relief for the resulting damages. Further, Plaintiffs are informed and believe and thereon allege that in the absence of injunctive relief, customers are likely to continue being mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Defendants' goods.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the court grants the following relief:

1. Plaintiffs' damages;
2. Defendants' profits;
3. Statutory damages;
4. Punitive damages of up to ten times the actual damages or higher as permitted by the Constitution;
5. Attorneys' fees;
6. Costs of suit;
7. Trebling for willful violation;
8. The impoundment and destruction of all counterfeit products, as well as the destruction of all tools, machines, molds, or other instrumentalities that were used to manufacture and display the counterfeit products;
9. Restitution in an amount to be proven at trial for unfair, fraudulent, and illegal business practices under California Business & Professions Code §17200;
10. Preliminary and permanently enjoining Defendants and their agents, employees, officers, directors, owners, representatives, successor companies, related

**COMPLAINT** 18

companies, and all persons acting in concert or participation with them and each of them from the import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing, advertising or promotion of the unauthorized and counterfeit AOT Products as identified in the complaint and any other unauthorized AOT Product or colorful imitation thereof;

11. Pursuant to 15 U.S.C. §1116(a), directing Defendants to file with the court and serve on Plaintiffs within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

12. For an order from the Court requiring that Defendants provide complete accountings and for equitable relief including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and pay restitution, including the amount of monies that should have been paid if Defendants had complied with their legal obligations, or as equity requires;

13. For an award of exemplary and punitive damages in an amount to be determined by the Court; and

14. For any other relief which the court finds to be just and appropriate.

Dated: August 8, 2016                    DER-PARSEGHIAN LAW GROUP


                                         */s/ Mary Der-Parseghian*
                                         Mary Der-Parseghian, Esq.
                                         Attorney For Plaintiffs
                                         Albert Kirakosian and Kiraco, LLC.

**COMPLAINT**                                                                    19