| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Joanna Ardalan | | Not Present |

**Proceedings:** PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (Dkt. 114, filed July 14, 2017)

## I.  INTRODUCTION

On August 15, 2016, plaintiff Albert Kirakosian ("Kirakosian") and Kiraco, LLC, dba Apple on Top ("Kiraco") filed this action against seventeen hookah retailers, including the instant defendant J&L D Sunset Wholesale & Tobacco. Dkt. 1. The gravamen of plaintiffs' complaint is that the defendants infringed upon Kirakosian's patent and trademark rights by selling or offering to sell counterfeit hookah products. Id. On November 10, 2016, plaintiffs served the summons and complaint on defendant. Dkt 23. On November 30, 2016, plaintiffs submitted proof of service to the Court. Id. Defendant has failed to file an answer or otherwise respond. On January 19, 2017, the Clerk of Court entered default against defendant. Dkt. 58.

On March 15, 2017, plaintiffs filed a motion for leave to amend complaint to dismiss three defendants, U.S. Global Imports, Hookah King, and Southbay Wholesale. Dkt. 86. On April 13, 2017, the Court granted plaintiffs' motion to amend the complaint. Dkt. 92. On April 28, 2017, plaintiffs filed a first amended complaint. Dkt. 96 ("FAC"). The gravamen of plaintiffs' FAC is similarly that defendants infringed upon Kirakosian's patent and trademark rights by selling or offering to sell counterfeit hookah products.

On June 30, 2017, the Court issued an order to show cause, ordering plaintiffs to show why the action should not be dismissed for lack of prosecution as to defendant J&L. Dkt. 107. On July 14, 2017, pursuant to the Court's June 30, 2017 order, plaintiffs responded by filing the instant motion for default judgment against defendant. Dkt. 114. On August 1, 2017, plaintiffs filed an ex parte application to lengthen the time to hear

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
|---|---|---|---|
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

plaintiffs' motion for default judgment. Dkt. 112. On August 2, 2017, the Court granted plaintiffs' ex parte motion and set the default judgment hearing to September 11, 2017. Dkt. 123.

## II. BACKGROUND

Plaintiffs allege the following facts.

Kirakosian is an individual residing in Los Angeles County. FAC ¶ 1. Kiraco is a California limited liability company that does business as Apple on Top. Id. ¶ 2. Defendant is a California corporation with its principal place of business in Rancho Cucamonga, California. Id. ¶ 3. Defendant imports and sells hookah and hookah accessories throughout the United States. Id. Defendant also does business as 7SG Stars Glass at its principal place of business in Rancho Cucamonga, California, where it sells hookah and hookah accessories. Id. ¶ 4.

Kirakosian developed a "small and sleek" hookah bowl that fits nearly all hookahs and delivers "the full smoking experience." FAC ¶ 25. Kirakosian branded the hookah accessory as Apple on Top "AOT". Id. On December 19, 2012, Kirakosian registered the hookah pipe head with the United States Patent and Trademark office and received Patent No. D726,366 (the "'366 Patent"). Id. ¶ 26. The product is round like an apple, features a single rubber green leaf attached to the metal bowl for easy handling of hot coals, is comprised of rubber ridges, and is available in various colors. Id. Since October 2012, plaintiffs have used the trademark "Apple on Top" on their website. Id. ¶ 31.

On May 30, 2013, Kiraco began using the AOT Mark to sell hookah and hookah accessories. Id. ¶ 28. Kiraco has devoted substantial time, effort, and resources to the development and extensive promotion of the AOT Mark and the products offered under it. Id. Due to Kiraco's trademark registration and continuous use in connection with hookah and hookah accessories, the hookah smoking public recognizes and relies upon the AOT Mark as an indication of the high quality and unique design of plaintiffs' hookah and hookah accessories. Id. In addition, as a result of Kiraco's trademark registration and extensive use of its AOT Mark, Kiraco owns valuable goodwill symbolized by the AOT mark. Id. ¶ 29.

On April 7, 2015, Kiraco validly registered the AOT Mark under Registration No. 4,717,006, deeming Kiraco the sole owner of all right, title, and interest in the AOT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

Mark.  Id. ¶ 30.  Since October 2012, plaintiffs have been using the trademark "Apple On Top" on their website, and also uses it as part of the URL, *www.appleontop.com*.  Id. ¶ 31.  In connection with its trademark registration and extensive use, Kiraco owns the AOT Trade Dress, which consists of the patented AOT product packaged in a small, clear plastic box with a distinct red banner at the base that reads "AOT ®."  Id. ¶ 32.  At the back of the box is a red backdrop with white text that describes the AOT product and its origins, as well as the URL for plaintiffs' website.  Id.

Plaintiffs allege that defendant is infringing or inducing others to infringe by making, using, offering to sell, and/or selling products that infringe the claims of the AOT patent.  Id. ¶ 33 & Ex. E.  This use of the AOT patent in commerce is without the permission, license, or authority of plaintiffs.  Id. ¶ 34.  The infringing products appear identical to AOT products in all material respects, including the word mark and packaging, and the infringing products even include the "patent pending" claim on the bottom of the product.  Id. ¶ 35.  Plaintiffs allege that defendant's infringement of the AOT patent is willful and deliberate, and that defendant knowingly received payments for this unauthorized and counterfeit product.  Id. ¶ 36.

Kirakosian has only one authorized manufacturer and one authorized wholesaler of the AOT product covered under the AOT patent.  Id. ¶ 41.  Kirakosian has inspected the infringing products and believes that these products, while looking identical to the AOT products, were not manufactured or sold by Kirakosian's authorized manufacturer and wholesaler.  Id. ¶ 43.

Plaintiffs allege that defendant has traded on plaintiffs' AOT Mark, goodwill and reputation in connection with AOT products and confused consumers as to the origin and sponsorship of defendant's product.  Id. ¶ 47.  The use of the AOT trademark in commerce is without authorization, legal right, or consent.  Id. ¶ 48.  Plaintiffs allege that unless restrained by the Court, defendant will continue to infringe on plaintiffs' AOT Mark, thus causing a multiplicity of judicial proceedings, and pecuniary compensation will not afford plaintiffs adequate relief for the damage to their AOT Mark and public perception.  Id. ¶ 49.  Plaintiffs allege that, as a proximate result of defendant's activities trading on plaintiffs' advertising, sales, and consumer recognition, defendant has made substantial sales and profits.  Id. ¶ 51.  As a result of these activities, plaintiffs have been damaged and deprived of substantial sales and have been deprived of the value of the AOT Mark as a commercial asset.  Id. ¶ 52.  Lastly, plaintiffs allege that defendant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

actions constitute unfair and deceptive acts or practices in the course of business, trade, or commerce. Id. ¶ 81.

## III. LEGAL STANDARDS

Pursuant to the Federal Rule of Civil Procedure 55, when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the plaintiff does not seek a sum certain, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55.

As a general rule, cases should be decided on the merits as opposed to by default, and therefore, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." Judge William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial ¶ 6:11 (The Rutter Group 2015) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Circ. 1985)). Granting or denying a motion for default judgment is a matter within the court's discretion. Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005); see also Sony Music Entertainment, Inc. v. Elias, 2004 WL 141959, *3 (C.D. Cal. Jan. 20, 2004).

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong policy favoring decisions on the merits. See Eitel, 782 F.2d at 1471-72; see also Elektra, 226 F.R.D. at 392.

## IV. DISCUSSION

    A.    **Application of the Eitel Factors**

        1.    **Possibility of Prejudice to Plaintiff**

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); see also Eitel, 782 F.2d at 1471-72. Courts have concluded that a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

plaintiff is prejudiced if the plaintiff would be "without other recourse for recovery" because the defendant failed to appear or defend against the suits. Pepsi, 238 F. Supp. 2d at 1177; see also Phillip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 499 (C.D. Cal. 2003).

Plaintiffs contend that despite knowledge of AOT's valid trademark, patent, and trade dress rights, defendant willfully ignored plaintiffs' rights and infringed upon them and sold counterfeit products. Dkt. 114-1 at 4 ("Memorandum"). Because defendant has not appeared in this matter, plaintiffs will be without any other recourse for recovery unless default judgment is granted. See PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (stating that plaintiffs would have no other recourse if a default judgment were not entered). At minimum, plaintiffs would be prejudiced through loss of sales and dilution of their AOT Mark if denied a remedy against the defendant. As a result, the first Eitel factor weights in favor of the entry of default judgment.

### 2. Substantive Merits and Sufficiency of the Claims

Courts often consider the second and third Eitel factors together. See PepsiCo, 238 F. Supp. 2d at 1175; HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 941(D. Ariz 2013). The second and third Eitel factors assess the substantive merit of the movant's claims and the sufficiency of its pleadings, which "require that a [movant] state a claim on which [it] may recover." PepsiCo, 238 F. Supp. 2d at 1177 (quotation marks omitted); see also Danning v. Lavine, 572 F.2d 1386, 1388(9th Cir. 1978) (stating that the issue is whether the allegations in the pleading state a claim upon which plaintiff can recover).

Plaintiffs seek relief for: (1) patent infringement in violation of 35 U.S.C. § 271; (2) trademark infringement in violation of 15 U.S.C. § 1114; (3) trademark counterfeiting in violation of 15 U.S.C. § 1116 and state statutory counterfeiting in violation of Cal. Bus. & Prof. Code § 14250; and (4) false designation of origin in violation of 15 U.S.C. § 1125(a), common law trademark infringement, and unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 and 17500, et seq.

#### a. Patent Infringement

Plaintiffs allege that defendant has infringed on their design patents under 35 U.S.C. § 271. Section 271 provides that "whoever without authorities makes, uses, offers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

to sell, or sells any patented invention… infringes that patent." 35 U.S.C.A. 271. In order to establish design patent infringement, plaintiffs must prove that an ordinary observer familiar with the patented product would be deceived into believing that the accused product is the same as the patented design. Egyptian Goddess, Inc. v. Swisa, Inc., 543 F. 3d 665, 681 (Fed. Cir. 2008).

Plaintiffs sufficiently allege the necessary requirements to demonstrate design patent infringement. Plaintiffs establish that they held the enforceable patent for the AOT product at all relevant times. FAC ¶ 26. Plaintiffs allege that defendant has infringed its AOT patent by importing, making, using, offering to sell, or selling in the United States products that are covered by claims of the AOT patent. Id. ¶ 40. Plaintiffs provide images of their AOT product packaging, Ex. D, and plaintiffs also provide images of the allegedly infringing hookah bowls that depict nearly identical copies of plaintiffs' designs. Id. ¶ 33 & Ex. E. The infringing product contains substantially the same design, including the apple-like shape, indented portions of the bowl, the removable tray with a particular pattern of holes, and the rubber green leaf. See Exs. D, E.

Therefore, the Court concludes that plaintiffs adequately plead their patent infringement claims, and the first factor weighs in favor of the entry of default judgment.

### b.     Trademark Infringement

Plaintiffs allege trademark infringement under 15 U.S.C. § 1114(1) of the Lanham Act, which imposes liability on a person who uses a registered mark without the consent of the registrant and where "such use is likely to cause confusion or to cause mistake[.]" To prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove: (1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion. Credit One Corp v. Credit One Financial, Inc., 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009); see also Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Prod. Grp., Inc. v. SKG Studio, d/b/a Dreamworks SKG, 142 F.3d 1127, 1129 (9th Cir, 1998). The Ninth circuit has identified eight factors that should be considered in making this assessment, however "in cases involving counterfeit marks, it is unnecessary to perform this step-by-step examination … because counterfeit marks are inherently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                  **'O'**

| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
|---|---|---|---|
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

confusing." Phillip Morris USA Inc. v. Shalabi, 352 F.Supp.2d 1067, 1073 (C.D. Cal. 2004). Counterfeiting is a subset of trademark infringement under 15 U.S.C. § 1114(a)(1). A "counterfeit" is defined in the Lanham Act as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1114(a)(1).

Under the Lanham Act, a plaintiff may recover statutory damages "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court consider[s] just." 15 U.S.C. § 1117(c)(1). In addition, where a defendant's conduct has been willful, the court may grant enhanced statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). "Willfulness requires a connection between the defendant's awareness of its competitors and the defendant's actions at those competitors' expense. Otter Products, LLC v. Berrios, No. 13-cv-4384-RSWL-AGR, 2013 WL 5575070, *9. "Several courts have found statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." Microsoft Corp. v. NOP, 594 F. Supp. 2d 1233, 1138 (E.D. Cal. April 17, 2008).

Here, plaintiffs have alleged a prima facie case of trademark infringement and counterfeiting. See FAC ¶ 45–52. Kiraco is the owner of a federally registered and valid trademark. Id. ¶ 31. The infringing products look confusingly similar and also bear the identical AOT Mark. Defendant is a sophisticated seller of hookah products and is aware of the valid trademark as plaintiffs expressly denote the trademark symbol and provide a URL for the AOT website on all of plaintiffs' products. Memorandum at 9. Despite this express trademark symbol, defendant ignored plaintiffs' rights and infringed upon the AOT products and sold counterfeits. Id. at 10. These counterfeits are likely to confuse a reasonably prudent consumer because the counterfeits are substantially indistinguishable from the AOT products. Id. at 11–12. The infringing products appear identical to AOT products in all material respects, including the AOT Mark and packaging, and the infringing products even include the "patent pending" claim on the bottom of the product. See FAC & Exs. D, E. Accordingly, plaintiffs allege a prima facie case for trademark infringement and counterfeiting, and therefore may seek injunctive relief pursuant to 15 U.S.C.A. § 1116 and Cal. Bus. & Prof. Code § 14250.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

Furthermore, there is evidence sufficient to support a finding of willful infringement. Dkt. 114-2, Kirakosian Declaration ("Kirakosian Decl.") ¶ 12. Kirakosian visited defendant's establishment on March 4, 2016 and inquired specifically about AOT products sold by defendant. Id. On this occasion, defendant's co-owner stated that he sells hundreds of AOT's every week. Id. In addition, "the failure of a party to defendant itself against allegations of trademark counterfeiting is indicative of willful trademark infringement." Nop, 549 F. Supp. 2d at 1238; see also Sennheiser Elec. Corp v. Eichler, No. 12-cv-10809-MMM-PLA, 2013 WL 3811775, *5 (C.D. Cal. July 19, 2013) ("An allegation of willful trademark infringement is deemed true when the defendant defaults."). Thus, plaintiffs sufficiently allege willful infringement because of the statements of defendant's co-owner, and because defendant has failed to defend itself in the instant action.

Plaintiffs adequately allege that they own the AOT Mark, that defendant uses the AOT Mark without plaintiffs' consent, and that defendant's infringing products are confusingly similar to plaintiffs' AOT products. Additionally, plaintiffs demonstrate that defendant's infringement is willful. As a result, the Court concludes that plaintiffs adequately plead their trademark infringement and trademark counterfeiting claims, and the second and third factors weigh in favor of the entry of default judgment.

### c.     False Designation & Unfair Competition

Plaintiffs allege violations under sections 1114 and 1125 of the Lanham Act. "Although they are distinct claims, the elements are essentially identical and the same evidence establishes both claims." Phillip Morris USA Inc. v. Liu, 489 F. Supp. 2d 1119, 1121–22 (C.D. Cal. 2007). Identical to the Court's analysis of defendant's trademark violations under section 1114(1), defendant is liable for violations of section 1125 if plaintiffs demonstrate that (1) they own a valid and protectable trademark, and that (2) defendant used in commerce a similar mark without authorization in a manner likely to cause consumer confusion, deception, or mistake. Id. Here, as the Court previously discussed, plaintiffs demonstrate that they own the AOT Mark. Furthermore, defendant sells infringing products, without authorization, that are substantially similar to the AOT products, and are likely to cause consumer confusion, deception, or mistake. Therefore, plaintiffs adequately allege a claim for false designation of origin in violation of section 1125 of the Lanham act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

California's Unfair Competition Law ("UCL") prohibits "unfair competitions … includ[ing] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is separate and distinct theory of liability." Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009). "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations … as unlawful practices, independent actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." Farmers Ins. Exch. V. Super. Court, 826 P.2d 730, 734 (Cal. 1992) (quotation marks omitted); Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Plaintiffs rest their UCL claim on defendant's alleged trademark infringement. See FAC ¶¶ 80–85. A violation of the Lanham Act may support a claim under the UCL, because the Ninth Circuit has consistently held that state common law violations of unfair competition and actions pursuant to Cal. Bus. & Prof. Code section 17200 are "substantially congruent" to claims made under the Lanham Act. Cleary v. News Corp., 30 F.3d 1255, 1262–63 (9th Cir. 1994). Accordingly, because the Court concludes that plaintiffs have sufficiently stated a claim for trademark infringement, plaintiffs have likewise adequately stated a claim for unfair competition in violation of the UCL.

Thus, the Court concludes that plaintiffs adequately plead their false designation of origin and unfair competition claims, and the second and third factors weigh in favor of the entry of default judgment.

### 3. The Sum of Money at Stake in the Action

Pursuant to the fourth Eitel factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." PepsiCo, 238 F. Supp. 2d at 1176; see Eitel, 782 F.2d at 1471-72. "This determination requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." United States v. Broaster Kitchen, Inc., No. 2:14-cv-09421-MMM, 2015 WL 4545360, *6 (C.D. Cal. May 27, 2015); see also Walter v. Statewide Concrete Barrier, Inc., No. 04-cv-02559-JSW, 006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2016) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

Plaintiffs do not submit evidence in connection with this motion that addresses the expenses saved and profits reaped by defendant, or in turn, the revenues lost by plaintiffs. Here, plaintiffs allege they are deprived of substantial sales and the value of the AOT Mark and AOT trade dress. FAC ¶ 66. Yet plaintiffs were deprived of the opportunity to review defendant's records due to defendant's failure to appear or respond to plaintiffs' complaint or motion for default judgment. For that reason, "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1238 (E.D. Cal. April 17, 2008). Accordingly, this factor weighs in favor of the entry of default judgment.

Plaintiffs also seek non-monetary damages in the form of injunctive relief from the continued use of their trademarks on defendant's counterfeit products. Accordingly, non-monetary damages favor granting default judgment. PepsiCo, 238 F. Supp. 2d at 1177.

### 4. Possibility of Dispute

The fifth Eitel factor considers the possibility that material facts are disputed. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. As explained, plaintiffs adequately allege their claims for patent infringement, trademark infringement and trademark counterfeiting, false designation of origin, and unfair competition. Therefore, the Court concludes that no factual disputes exist that would preclude the entry of default judgment on these four claims. As a result, the fifth Eitel factor weighs in favor of the entry of default judgment on these claims.

### 5. Possibility of Excusable Neglect

The sixth Eitel factor considers whether defendant's default may have been the product of excusable neglect. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. Here, there is no indication that default was entered due to defendant's excusable neglect. Defendant was properly served with the summons and complaint, see dkt. 23, yet has failed to show cause why a default judgment should not be entered against it. Accordingly, this factor weighs in favor of entry of default judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

### 6. Public Policy in Favor of Deciding the Merits

Under the seventh Eitel factor, the Court takes into account the strong policy favoring decisions on the merits. See Eitel, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). However, a party's failure to answer or appear makes a decision on the merits impractical, if not impossible. PepsiCo, 238 F. Supp. 2d at 1177. Since defendant failed to respond to plaintiffs' complaint, this factor does not preclude entry of default judgment.

### 7. Conclusion Regarding the Eitel Factors

Apart from the policy favoring decisions on the merits, all of the remaining Eitel factors counsel in favor of default judgment, including the merits of plaintiffs' claims for patent infringement, trademark infringement and trademark counterfeiting, false designation of origin, and unfair competition. See Federal Nat. Mortg. Ass'n v. George, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important Eitel factors.") (citations omitted). All of the Eitel factors are neutral or weigh in favor of the entry of default judgment. Consequently, it is appropriate to grant plaintiffs' motion for default judgment against defendant.

## B. Relief

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). Plaintiffs seek damages under the Lanham Act, injunctive relief, plus attorneys' fees and costs. Memorandum at 17–20.

### 1. Damages for the Lanham Act Claims

Although 15 U.S.C. § 1117(c) does not provide guidelines for determining an appropriate statutory damages award, courts faced with determining statutory damages under the Act should "consider the defendant's profits, as well as saved expenses, the plaintiff's lost revenues, and the defendant's state of mind." Rolex Watch U.S.A. v. Zeotec Diamonds, Inc., No. CV 02-01089 GAF (VBKx), 2003 WL 23705746, *4 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
|---|---|---|---|
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

Cal. Mar. 7, 2003). The resulting statutory damage award should be "low enough to bear some rational relationship to the amount of damage incurred… but substantial enough to deter similarly situated businesses from engaging in similar conduct in the future." Id. at *5. There must be a "plausible relationship" between the damages sought by plaintiff and the defendant's infringing conduct. See Beachbody , LLC v. Johannes, No. 11-cv-1148 PSG (RZx), 2011 WL 3565226, *3 (C.D. Cal. August 12, 2011) (finding that plaintiff's request for $2,150,000 in statutory damages was unreasonable where there were no figures confirming defendant's profits).

"A court has wide discretion to determine the amount of statutory damages between the statutory maxima and minima." Microsoft Corp. v. Coppola, No. C 06–06701 WHA, 2007 WL 1520964, *4 (N.D. Cal. May 24, 2007) (citing Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir.1984)). A court is less likely to award significant statutory damages, especially maximum damages, if plaintiffs fail to substantiate or delineate the basis for the relief sought. See Coach, Inc. v. Am. Fashion Gift, No. 12-cv-07647-MWF RZX, 2013 WL 950938, *2 (C.D. Cal. Mar. 12, 2013) (awarding plaintiffs $10,000, instead of a requested $100,000, in statutory damages based on "the paucity of supporting evidence" where "it [was] not clear whether Defendants sold one or one million infringing purses"); Coach Inc. v. Envy, No. 1:11–cv–1029 LJO GSA, 2012 WL 78238, *4 (E.D. Cal. Jan.10, 2012) (denying plaintiffs' motion for default judgment without prejudice in part because of the breadth of the allegations in the complaint and a lack of evidence "regarding what products in particular were obtained, the value of the items, the presence of other products in the store, or how the introduction of these products into the market specifically [a]ffected Coach's profit. Plaintiffs' statements that they do not have information as to how many goods were sold, or the amount of revenues lost by Plaintiffs because Defendant failed to appear in this action, is not sufficient to support a $100,000 damage request"). But see Philip Morris USA, Inc. v. Castworld Prod., Inc., 219 F.R.D. 494, 50–02 (C.D. Cal. 2003) (awarding $2,000,000 in statutory damages where a defendant willfully imported 8,000,000 counterfeit cigarettes having a street value of millions of dollars).

Plaintiffs request $2,000,000 for infringement of the AOT Mark. This is the ceiling of the range for damages where a defendant's conduct was willful. 15 U.S.C. § 1117(c)(2). To justify this award, plaintiffs note that the original AOT products were priced at $19.00 at wholesale and $39.00 at retail. Kirakosian Decl., ¶ 11. Yet because defendant priced the counterfeit AOT products much lower than plaintiffs' wholesale

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

price, at $12.00, plaintiffs were forced to sell the authentic AOT products at $15.00 wholesale. Kirakosian Decl., Ex. G. Plaintiffs have not estimated the revenue lost as a result of defendant's infringing conduct, or the profit reaped by defendant. Plaintiffs also do not provide evidence of defendant's number of confirmed sales or the true value of the counterfeited products. However, plaintiffs do contend that defendant's co-owner represented that he sells hundreds of AOT products every week. Memorandum at 10.

Nonetheless, plaintiffs have adequately alleged that defendant's conduct is willful. A court may grant enhanced damages of up to $2,000,000 per counterfeit mark on a finding of willful infringement. Id. The need to deter this type of willful conduct warrants a damage award, however, the award need not be substantial to achieve this goal. Coach, Inc. v. American Fashion Gift, CV 12-07647-MEF (RZx), 2013 WL 950938 (C.D. Cal. March 12, 2013) (noting that $10,000 in statutory damages was sufficient where "the record ma[de] clear that Coach's trademarks [were] highly valuable and that Defendants acted willfully," and noting that "any award would have a deterrent effect on other would-be infringers and would discourage Defendants from committing future infringement"). Plaintiffs have been denied an opportunity to discover the full extent of their actual damages and lost profits because defendant has failed to appear in this action. Plaintiffs allege that the infringing products appear identical to AOT products in all material respects, including the word mark and packaging. FAC ¶ 47, 56–57. Plaintiffs also argue that defendant's sale of counterfeit AOT products is potentially harmful to public health, as counterfeit AOT products are frequently made with shoddy materials that are potentially harmful to the consuming public. Memorandum at 16.

The Court concludes that plaintiffs are entitled to $100,000 in statutory damages for trademark infringement. "The damages that [plaintiffs] seek are thus within the allowable range set by Congress. Since the district court has 'wide discretion in determining the amount of statutory damages to be awarded,' the amount of money requested does not weigh against the entry of default judgment." Sennheiser, 2013 WL 3811775, at *5 (quoting LA News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998)); see also Philip Morris, 219 F.R.D. at 500 ("Given Defendant's infringing [conduct], the likelihood that its conduct would cause confusion or mistake or otherwise deceive customers, and its failure to comply with the judicial process or to participate in any way in the present litigation, the Defendant has engaged in willful use of the counterfeit mark, which justifies the imposition of a substantial monetary award."). Where, as here, plaintiffs seek statutory damages "consistent with that to which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

Plaintiff[s] [are] entitled by law ..., while the amount of money at issue is substantial, this factor does not significantly weigh against granting default judgment." TVB Holdings (USA), Inc. v. eNom, Inc., No. 13-cv-624-JLS-DFM, 2014 WL 3717889, at *3 (C.D. Cal. July 23, 2014); see also Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (after default, awarding statutory damages of $100,000 for each of seven trademarks at issue and $30,000 for each of nine copyrights at issue, for a total of $710,000). The Court thus finds that $100,000 in statutory damages is reasonably proportionate to the willful harm that defendant has caused and will deter future infringement.

### 2. Injunctive Relief

Plaintiffs seek a permanent injunction barring defendant's use of its trademark and patent. Memorandum at 18. Specifically, plaintiffs request that the court permanently enjoin defendant from importing, purchasing, distributing, selling, offering for sale, or otherwise using in commerce any counterfeit hookah products hearing AOT, Apple on Top, or similar language, and assisting, aiding, or abetting any other person or entity in importing, purchasing, distributing, selling, offering for sale, or otherwise using in commerce any counterfeit hookah products bearing AOT, Apple on Top, or similar language. FAC ¶ 10; Memorandum at 20.

The Lanham Act gives the Court the power to grant injunctions to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark office. 15 U.S.C. 1116(a). Furthermore, the Patent Act grants the Court the same injunctive power. 35 U.S.C. § 283. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1998). A Court may grant a permanent injunction if the plaintiff satisfies a four-factor test. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 392–93 (2006). Specifically, a plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; (4) that it is the public's interest to issue the injunction. eBay, 547 U.S. at 391.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

"[W]hen a plaintiff establishes in a trademark infringement or unfair competition action a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable harm if an injunction is not granted." Otter Prod., LLC v. Berrios, No. 13-cv-4384-RSWL-AGRX, 2013 WL 5575070, *11 (C.D. Cal. Oct. 10, 2013). Furthermore, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001). Plaintiffs' pleadings show a likelihood of confusion as to the origin of the infringing products, and thus a potential loss of prospective customers, as well as harm to reputation and goodwill if the products are inferior. FAC ¶¶ 47–48. Therefore, the Court finds that plaintiffs will be irreparably harmed by defendant's continued use and infringement of plaintiffs' AOT Mark.

Plaintiffs satisfy the second element concerning inadequate legal remedy. "Damage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages." Car-Freshner Corp. v. Valio, LLC, No. 2:14-cv-01471-RFB-GWF, 2016 WL 7246073, *8 (D. Nev. Dec. 15, 2016). Plaintiffs allege that unless enjoined, defendant will continue to infringe upon plaintiffs' AOT Mark. FAC ¶¶ 47–48. Although, post-eBay, a court may no longer presume irreparable injury from the bare fact of liability in a trademark or trade dress case, the injury caused by the presence of infringing products in the market—such as lost profits and customers, as well as damage to goodwill and business reputation—will often constitute irreparable injury. Sennheiser, 2013 WL 3811775 at *10 (citations omitted). Plaintiffs adequately allege that defendant had used and will continue to use counterfeit products. FAC ¶ 49. Furthermore, plaintiffs contend that this use will create consumer confusion and damage to their reputation and goodwill. FAC ¶¶ 47–48; Memorandum at 19. See Wecosign, Inc. v. IFT Holdings, Inc., 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("if an injunction were not granted, plaintiff would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers to counterfeit services").

Furthermore, the balance of hardships favors plaintiffs as they will lose profits and goodwill, while an injunction will only proscribe defendant's infringing activities. Wescosign, Inc. v. IFG Holdings, Inc., 845 F.Supp.2d. 1072, 1084 (C.D. Cal. Jan. 23, 2012). There is no indication that defendant will suffer hardship if a permanent injunction is entered. Rather, an injunction will merely assure defendant's compliance with the Lanham Act and other laws governing trademark and patent infringement and unfair competition. See Sennheiser, 2013 WL 3811775 *11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

Finally, an injunction is in the interest of the public because "[t]he public has an interest in avoiding confusion between two companies' products." Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 993 (9th Cir. 2009). "Where defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use." AT&T Corp. v. Vision One Sec. Sys., No. 95-0565-IEG (BTM), 1995 WL 476251 *7 (S.D. Cal. July 27, 1995). Furthermore, there is a public interest in limiting counterfeited good made with inferior products from entering the market. Counterfeit products made from inferior materials may lead to members of the public becoming ill from smoking. Kirakosian Decl. ¶ 13.

Therefore, the Court finds that plaintiffs have met the statutory and equitable requirements for permanent injunctive relief as to the patent and trademark violations asserted in the complaint. See Adobe Sys., Inc. v. Tilley, No. 09-cv-1085-PJH, 2010 WL 309249 *6 (N.D. Cal. Jan. 19, 2010) (granting a permanent injunction on a motion for default judgment because, "[i]n light of Defendants' past infringement and their failure to appear in this action, injunctive relief is warranted").

### 3. Attorneys' Fees and Costs

Plaintiffs seek an award of reasonable attorneys' fees. With respect to trademark counterfeiting, reasonable attorneys' fees and costs are mandated by statute. 17 U.S.C. 1117(b). Section 1117(a) gives the court discretion to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. 1117(a). The term "exceptional case" is generally accepted to mean cases in which trademark infringement is "deliberate and willful." See Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993). Additionally, a case may be deemed "exceptional," and merit an award of attorneys' fees under the Lanham Act, when defendant disregards the proceedings and does not appear. See Phillip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 502 (C.D. Cal. Dec. 31, 2003).

Local Rule 55-3 determines attorneys' fees for a default judgment pursuant to a fixed percentage schedule. C.D. Cal. L.R. 55-3. For a judgment of over $100,000, the schedule of attorneys' fees allows $3,600 plus 4% of the amount of damages awarded over $50,000. Id. Accordingly, because plaintiffs' judgment for one trademark infringement is $100,000, plaintiffs' counsel is entitled to $5,600 in attorneys' fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:16-cv-06097-CAS(PLAx) | Date | September 11, 2017 |
|---|---|---|---|
| Title | ALBERT KIRAKOSIAN ET AL v. J&L SUNSET WHOLESALE & TOBACCO ET AL. | | |

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** plaintiffs' motion for default judgement with respect to plaintiffs' claims for patent infringement, trademark infringement and trademark counterfeiting, false designation of origin, unfair competition, and injunctive relief.

It is hereby ordered that judgment be entered in favor of plaintiffs with respect to these four claims and with respect to plaintiff's request for injunctive relief. Defendant shall be liable to plaintiffs in the amount of $105,600, which is comprised of: (a) $100,000 in statutory damages for trademark infringement; and (b) $5,600 in attorneys' fees. Costs shall be awarded pursuant to plaintiffs' bill of costs. Plaintiffs shall submit a Proposed Judgment in accordance with this order.

IT IS SO ORDERED.

|  | 00 : 02 |
|---|---|
| Initials of Preparer | CMJ |